1  STANLEY GOFF (Bar No. 289564)
   LAW OFFICE OF STANLEY GOFF
2  15 Boardman Place Suite 2
   San Francisco, CA 94103
3  Telephone: (415) 571-9570
   Email: scraiggoff@aol.com
4

5  Attorneys for Plaintiff Robert Strong

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

| ROBERT STRONG; | CASE NO.: 2:18-cv-01246-WBS-AC |
|---|---|
| Plaintiffs, | |
| v. | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| CITY OF VALLEJO, JARRETT TONN, ANDREW BIDOU and DOE VALLEJO POLICE OFFICERS 1-25; | **DATE: May 18, 2020** <br> **TIME: 1:30 p.m.** <br> **CTRM: 5** |
| Defendants | |

1               **STATEMENT OF FACTS**

2          At approximately 2:15 pm on April 19th, 2017 at the location of Springs Road/Lassen
3   St. in the city of Vallejo, the Plaintiff (who is African American) was riding on the bus with his
4   special needs client to the client's house to drop the client off.

5          The Plaintiff then made a phone call as he walked to his parked car near the client'
6   home.

7          Vallejo Police officer Tonn drove past on the opposite side of the street.  The Plaintiff
8   and Officer Tonn made eye contact as Tonn passed by, and as soon as the Plaintiff opened the
9   door to his parked car while on the phone, Tonn had already made a U-Turn and pulled up in
10  front of the Plaintiff's car.

11         Officer Tonn got out of his car, and approached Plaintiff and asked what was he doing in
12  the neighborhood. The Plaintiff responded that he had dropped off his client at his client's house.
13  Officer Tonn then told the Plaintiff that he ran the plates of his car and that they came up expired
14  on April 2, 2017. (Defendants Depo Transcripts pg. 14 lines 17-20, exh "1" Body CamVideo
15  Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3"
16  to Stanley Goff Decl.)

17         The Plaintiff politely corrected Officer Tonn and informed him that his registration did
18  not expire until the end of April 2017. Officer Tonn informed the Plaintiff that he was recording
19  on his body camera and the Plaintiff informed Tonn that he was recording the interaction on his
20  cell phone. (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video
21  Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.)

22
23
24

At that moment, Officer Tonn reached for the claimant's phone and the claimant pulled away so that he couldn't grab his phone. Officer Tonn then threw the Plaintiff onto the ground and placed him into a carotid hold, and told the Plaintiff to stop resisting while he was trying to breathe. (Defendant's Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.)

The officer put his knee onto the Plaintiff's head and forced it into the concrete. The Plaintiff's lip scraped the concrete and started bleeding. The Plaintiff was subsequently arrested and detained for two hours and then released with Officer Tonn saying, "You seem like a nice guy and you're working so I'll let you go". He walked the Plaintiff outside.

**III. LAW AND ARGUMENT**

**A. Standard On Summary Judgment**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Because the purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses," (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)), "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed.R.Civ.P. 56(d).

1  The moving party bears the initial burden of demonstrating the absence of a genuine issue
2  of material fact for trial. (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).) If the
3  moving party meets its burden, the burden of production then shifts so that "the non-moving
4  party must set forth, by affidavit or as otherwise provided in Rule 56, `specific facts showing that
5  there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809
6  F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)). The Court must view the facts and
7  draw inferences in the manner most favorable to the non-moving party. (*United States v. Diebold
8  Inc.*, 369 U.S. 654, 655 (1962).)

9  A "scintilla of evidence" is insufficient to support the non-moving party's position; "there
10 must be evidence on which the jury could reasonably find for the [non-moving
11 party]." *Anderson*, 477 U.S. at 252. Accordingly, this Court applies to either a defendant's
12 or plaintiff's motion for summary judgment essentially the same standard as for a motion for
13 directed verdict, which is "whether the evidence presents a sufficient disagreement to require
14 submission to a jury or whether it is so one-sided that one party must prevail as a matter of
15 law." *Id. at* 251-52.

16 **PLAINTIFF'S RIGHTS UNDER THE FOURTH AMENDMENT WERE VIOLATED**

17 Excessive force claims are to be analyzed under the Fourth Amendment and its standard
18 of objective reasonableness. (*Scott v. Harris*, 550 U.S. 372, 381-83, (2007); (*Graham v. Connor*,
19 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).) "We first assess the quantum of
20 force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by
21 evaluating a range of factors." (*Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).)

22 Factors that are considered are the severity of the crime at issue, whether the suspect
23 poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight. (*Graham*, 490 U.S. at 396); (*Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).)

The courts in the Ninth Circuit have long considered tasers an "intermediate, significant level of force that must be justified by the governmental interest involved." (*Bryan v. MacPherson*, 630 F.3d 805, 810, 826 (9th Cir. 2010)); (*Oliver v. Fiorino*, 586 F.3d 898, 903 (11th Cir. 2009)) (recognizing that the Taser is "designed to cause significant, uncontrollable muscle contractions"); *(Bryan*, 630 F.3d at 810 (finding that Taser use "unquestionably seizes the victim in an abrupt and violent manner," and, "[a]ccordingly, the "nature and quality" of the intrusion into the interests of [the suspect] protected by the Fourth Amendment was quite severe.")

**The Nature and Quality of the Intrusion**

In evaluating the severity of the intrusion on the Plaintiff's Fourth Amendment rights, both "the type and amount of force inflicted." must be evaluated. (*Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003).); ("[T]he fact finder [must] evaluate 'the type and amount of force inflicted.'" (*Chew v. Gates,* 27 F.3d 1432, 1440 (9th Cir. 1994).)

The Ninth Circuit has made it clear that in evaluating the severity of the intrusion on a plaintiff's Fourth Amendment rights, a court must assess not only the *amount* of force used (and the severity of the resulting injury), but also the *type* of force used and the *potential* harm it may cause. *See Miller v. Clark Cty.*, 340 F.3d 964 (9th Cir. 2003). ("[W]e assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating *the type and the amount of force inflicted."*; (*Scott v. Harris*, 550 US 372, 383 (2007).)

The Ninth Circuit has found that the carotid hold constitutes deadly force. *Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997), In *Nava v. City of Dublin,* the district court held that use of a carotid hold constitutes deadly force. In its review of this case on appeal, the Ninth Circuit did not disturb the trial court's finding that the carotid hold constituted deadly force.

Here, Defendant Tonn has admitted in his response to the Plaintiff's request for admissions that a carotid restraint was applied to the Plaintiff and this fact is evident based on the body camera footage. (Defendant Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) Thus, the use of force by Defendant Tonn was a severe intrusion on the Plaintiff's Fourth Amendment rights. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (internal citations and quotations omitted). Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ibid.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . ." *Id.* at 396-97. "In some cases . . . the availability of alternative methods of capturing or

1  subduing a suspect may be a factor to consider." <u>Smith v. City of Hemet,</u> <u>394 F.3d 689, 701 (9th</u>
2  <u>Cir. 2005)</u>.

3      Turning to the first factor, Defendant Tonn initially stopped the Plaintiff for having an
4  expired registration tag(s) on his car (a citable offense) (Defendants Depo Transcripts pg. 14
5  lines 17-20, exh "1" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam
6  Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) and he did not have probable cause
7  to arrest the Plaintiff for not getting off of his cell phone when he was commanded to do so,
8  because the Plaintiff was not on his cell phone speaking to anyone, but was simply recording the
9  interaction between him and Defendant Tonn on his phone, which he had a constitutional right to
10 do.  Nevertheless, even if it could be argued that the Defendant had a governmental interest in
11 arresting the Plaintiff for not following his commands, the crime of not getting off of a cell
12 phone when commanded to do so would not constitute a severe crime. (*Young v. County of L.A.*,
13 655 F.3d 1156, 1164 (9th Cir. 2012) Thus, this factor cuts against the Defendants' justification
14 for the use of significant force. Defendants Depo Transcripts pg. 14 lines 17-20, exh "1" Body
15 CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-
16 01:24, exh "3" to Stanley Goff Decl.

17     The most important of the three factors set out in *Graham* is "whether the suspect poses
18 an immediate threat to the safety of the officer[s]or others." <u>490 U.S. at 396</u>. Further, Courts in
19 the Ninth Circuit have held that a the use of a carotid hold constitutes deadly force and that such
20 a use of force is not warranted, absent a party posing a threat of immediate danger or great bodily
21 harm to an officer. (<u>Nava v. City of Dublin,</u> <u>121 F.3d 453 (9th Cir. 1997)</u>.)

22     It is undisputed that Defendant Tonn placed the Plaintiff in a carotid hold, (Defendant
23 Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4" Body CamVideo

1  Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3"
2  to Stanley Goff Decl.) thus, the Plaintiff would have had to pose a threat of immediate danger or
3  great bodily harm to Defendant Tonn to warrant Tonn's use of a carotid hold, however, it is
4  undisputed that Plaintiff never posed a threat of immediate danger or great bodily harm to Tonn,
5  as shown by the video footage and as admitted by Defendant Tonn in his deposition. Defendants
6  Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29 lines 2-7, exh "1" to Stanley
7  Goff Decl ) Also, the video footage shows that the Plaintiff did not pose ***any*** imminent threat to
8  Tonn to warrant the use of such force. Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's
9  Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.)

10      Further, the video footage clearly shows that the Plaintiff was not talking to anyone on
11  the telephone and that he was simply recording the interaction between him and Defendant Tonn.
12  (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage.
13  00:00-01:24, exh "3" to Stanley Goff Decl.) The Plaintiff was taken to the ground without
14  provocation, did not offer any resistance while being taken to the ground and was then placed in
15  a carotid hold (choke hold) causing the Plaintiff extreme pain and distress and preventing him
16  from being able to breathe. (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell
17  Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) There are no facts
18  pointed out in the incident report, on the video footage or in Defendant Tonn's deposition that
19  indicate that Plaintiff posed a threat of death or great bodily injury or any other imminent threat
20  to Defendant Tonn. (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam
21  Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.)Thus, this factor weighs in the
22  Plaintiff's favor.
23

Turning to the third factor in *Graham,* it is undisputed that based on Defendant Tonn's deposition testimony and the video footage, that Plaintiff was taken out of his car and to the ground without provocation and placed in a carotid restraint, and that he did not offer any resistance while being taken out of his car, to the ground and placed in a carotid hold. (Defendants Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29 lines 2-7; 20 lines 8-14, exh "1" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) Thus, this factor weighs in the Plaintiff's favor.

**THE DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY**

"Qualified immunity protects government officers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013); (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) To determine whether an officer is entitled to qualified immunity, a court must conclude (1) whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct. (*Maxwell*, 708 F.3d at 1082).)

### A. Violation of a Constitutional Right

Excessive force claims are to be analyzed under the Fourth Amendment and its standard of objective reasonableness. (*Scott v. Harris*, 550 U.S. 372, 381-83, (2007); (*Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).) "We first assess the quantum of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." (*Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).)

Factors that are considered are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. (*Graham*, 490 U.S. at 396); (*Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).)

The Ninth Circuit has found that the carotid hold constitutes deadly force. <u>Nava v. City of Dublin,</u> 121 F.3d 453 (9th Cir. 1997), In <u>Nava v. City of Dublin,</u> the district court held that use of a carotid hold constitutes deadly force. In its review of this case on appeal, the Ninth Circuit did not disturb the trial court's finding that the carotid hold constituted deadly force.

Here, the Defendant violated the Plaintiff's rights under the Fourth Amendment when he placed the Plaintiff in a carotid hold, which constituted deadly force, because at the time that the above-mentioned force was used, the Plaintiff was unarmed, did not pose any threat to Defendant, any other officers or bystanders.

Thus, based on the *Grahm* factors that are to be considered when analyzing a Fourth Amendment excessive force claim, the Plaintiff's Fourth Amendment rights were violated.

**B. Clearly Established Law**

Further, it has been clearly established by 2017 when the events occurred in this case, that the level of force employed by Defendant Tonn (placing someone in a carotid hold) was significant. *Bryan*, 630 F.3d at 825; *Blankenhorn*, 485 F.3d at 480 (impact blows by punching or kicking are considered significant or intermediate force capable of inflicting significant pain and causing serious injury) and constituted deadly force, only to be used if faced with an immediate threat of danger or great bodily harm. (*Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997),)

Therefore, the Defendant is not entitled to qualified immunity.

## CONCLUSION

The Court should grant the Plaintiff's Motion for Summary Adjudication.

Dated: March 31, 2020

                                       /S/ STANLEY GOFF

                                     Attorney for Plaintiff Robert Strong