RANDY J. RISNER
Interim City Attorney, SBN 172552
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, 3rd Floor
Vallejo, CA 94590
Tel:   (707) 648-4545
Fax:   (707) 648-4687

**P O R T E R | S C O T T**

JOHN R. WHITEFLEET, SBN 213301
KAVAN J. JEPPSON, SBN 327547
350 University Ave., Suite 200
Sacramento, CA
Tel: (916) 929-1481
Fax: (916) 927-3706
Email: jwhitfleet@porterscott.com

Attorneys for Defendants: CITY OF VALLEJO, ANDREW BIDOU, JARRETT TONN

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| ROBERT STRONG,<br><br>            Plaintiff,<br><br>vs.<br><br>CITY OF VALLEJO, JARRETT TONN; ANDREW BIDOU, and DOE VALLEJO POLICE OFFICER,<br><br>            Defendants. | Case No.: 2:18-CV-01246-WBS-AC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  June 1, 2020<br>Time: 1:30 p.m.<br>Courtroom: 5, 14th Floor |

Defendants CITY OF VALLEJO and JARRETT TONN hereby submit the following Opposition to Plaintiff's Motion for Partial Summary Judgment.

## I. INTRODUCTION

In his motion, Plaintiff purposefully mischaracterizes Officer Tonn's Responses to Requests For Admission to claim a carotid hold was used on Plaintiff, when in fact the response denies actually applying pressure to Plaintiff's neck while in the hold, and thus it was an unperfected or incomplete carotid hold.

Plaintiff's own expert agrees a perfected carotid hold causes a suspect to lose consciousness within seconds, and it is undisputed that not only did Plaintiff not lose consciousness while in the hold, but instead

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1  was yelling at Officer Tonn during the minute or so it took to place Plaintiff in custody.

2      As argued in Defendant's motion for summary judgment, it is undisputed that: (1) the traffic stop

3  occurred in a high crime area of Vallejo; (2) Officer Tonn told Plaintiff the reasons for the traffic stop; (3)

4  Plaintiff was immediately hostile and uncooperative with the officer; (4) Plaintiff refused to surrender his

5  cellphone; (5) Plaintiff resisted and pulled away from the officer, and refused to follow orders to place his

6  hands behind his back. With all of those facts in mind, Plaintiff nevertheless contends that the officer's

7  brief control hold, used merely to detain Plaintiff for the officer's safety, violated his Fourth Amendment

8  Rights.

9      Defendants submit that the carotid hold was, at most, an incomplete carotid hold, and either is not

10 entitled to summary judgment, nor has Plaintiff established Defendant violated clearly established law

11 such that he is not entitled to qualified immunity.

12 ## II. LEGAL STANDARD

13     A motion for summary judgment should be granted if "there is no genuine dispute as to any

14 material fact and the movant is entitled to a judgment as a matter of law." F.R.C.P. 56(a). The moving

15 party bears the initial burden of informing the court of the basis for the motion and identifying the portions

16 of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the

17 absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When

18 presented with a motion for summary judgment, the court shall review the pleadings and evidence in the

19 light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (*citing*

20 *Adickes v. S.H. Dress & Co.,* 398 U.S. 144, 158-59 (1970)). There is a genuine issue of fact for trial if the

21 record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Anderson,* 477

22 U.S. at 248; *see also T.W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630

23 (9th Cir. 1987). Conclusory, nonspecific statements in affidavits are not sufficient; and, the court will not

24 presume "missing facts." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888-89, 110 (1990).

25 ## III. ADDITIONAL STATEMENT OF UNDISPUTED FACTS

26     Plaintiff conveniently omits several undisputed facts known to Officer Tonn: that on April 19,

27 2017, at the location of Glenwood St. and Lassen St., in the city of Vallejo, Officer Tonn conducted a

28 traffic stop of Plaintiff for having an expired vehicle registration. (UMF No. 1). It is Officer Tonn's belief

that the block radius surrounding Lassen Street and Glenwood Street is considered an area of high crime due to previous incidents involving stolen cars and guns in that area. (UMF No. 2). Officer Tonn told Plaintiff his registration had expired on April 2, 2017, and Plaintiff told Officer Tonn that his registration was not expired (UMF No. 3).

While talking to Officer Tonn, Plaintiff held an iPhone in his hand. (UMF No. 4). Officer Tonn perceived Plaintiff as angry for being questioned about the registration. (UMF No. 5). Concerned that Plaintiff was attempting to call others to come to his location, Officer Tonn ordered Plaintiff to put his phone down, stating "You don't get to make a call Put your phone down." (UMF No. 6). Plaintiff refused to put his phone down and instead leaned into the center of his vehicle and began to record the officer on his phone (UMF No. 7). Fearing for his safety, Officer Tonn decided to detain Plaintiff. (UMF No. 8). Officer Tonn first attempted to place Plaintiff in a wrist hold by grabbing his left wrist, but Plaintiff twisted his body and pulled away (UMF No. 9). Unable to grab the phone, Officer Tonn pulled Plaintiff from the vehicle (UMF No. 10). Officer Tonn placed his bicep around Plaintiff's neck, placing him in a carotid maneuver to detain him. (UMF No. 11). The incomplete carotid maneuver did not cause Plaintiff to lose consciousness or the ability to breathe and speak. (UMF No. 12).

Officer Tonn brought Plaintiff to the ground, and repeatedly told Plaintiff to put his hands behind his back/head. (UMF No.13). Plaintiff continued to hold the phone in his right hand while on the ground (UMF No. 14). The carotid maneuver lasted approximately a minute to a minute and a half (UMF No. 15). Plaintiff and Defense Experts testified that a carotid hold, when applied with pressure, would leave someone unconscious within seconds. (UMF No. 16). Officer Tonn eventually detained Plaintiff in handcuffs. (UMF No. 17). Plaintiff was also found to have an expired driver's license (UMF No. 18). Plaintiff was arrested and transported to the Jail for violating Penal Code Section 148(a)(1) and Vehicle Code Section 14601.1 (UMF No. 19).  Officer Tonn never used pepper spray, baton, and/or other strike weapons during the entire incident. (UMF No. 20).

At the jail, Officer Tonn told Plaintiff the reasons why suspects aren't allowed to use cellphones during a stop, explaining the danger that it poses to both the individual and the officer (UMF No. 21). Plaintiff was cited and released from the jail. (UMF No. 22). Officer Tonn prepared the narrative police report. (UMF No. 23).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## IV. ARGUMENT

All claims that officers have used excessive force, deadly or not, in the course of the arrest, investigatory stop, or other "seizure" are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v Connor*, 490 U.S. 386, 395 (1989). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor, supra*, at 396). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor, supra*, at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id*, at 396-397. "Not every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Id*, at 388. The question is whether the Officer's actions are objectively reasonable in light of the facts and circumstances confronting him. *Id*, at 397. The reasonableness inquiry as to a police officer's actions is without regard to the officer's good or bad motivations or intentions. *Id.* Determining whether the force used to effect a particular seizure is "reasonable" requires careful attention to the facts and circumstances of each particular case. *Id*, At 395.

As explained below, Officer Tonn's use of force was objectively reasonable in light of the facts and circumstances surrounding the subject incident.

### A.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

Because Plaintiff will bear the burden of proof at trial on his claim, in order to prevail on summary judgment he must affirmatively demonstrate that based upon the undisputed facts no reasonable trier of fact could find other than for him. *See Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir.2007); *see also Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue ... he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor")). If the moving party does not discharge this initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159-60 (1970).

1    Here, Plaintiff bears the initial burden of setting forth evidence establishing beyond controversy

2  the elements of his excessive force claim. Plaintiff has not actually done so.  Instead, Plaintiff's Motion

3  presents an incomplete and mischaracterization of not only the events, but also of Officer Tonn's responses

4  to requests for admissions.    Defendants submit that the sparse facts as presented in the motion itself

5  renders it defective to carry his burden.

6    Regardless, Defendant's additional undisputed facts are sufficient to establish Plaintiff has not

7  carried his burden to grant summary judgment.   Contrary to his on-scene denial of expired vehicle

8  registration, it is undisputed the registration was in fact expired.  Plaintiff had additional motivation to be

9  initially hostile towards the officer: knowing he had an expired driver's license and that fact was likely

10  about to be discovered of the officer.  Also Plaintiff in fact admitted he was initially trying to make a call.

11  (Deposition of Plaintiff, p.50:5-8).

12    In addition, Officer Tonn noted that while he placed Plaintiff in a carotid maneuver by placing his

13  arm around Plaintiff's neck to gain control, this is but a commencement of the hold. A completed carotid

14  hold requires the application of pressure to the individual's neck/carotid arteries, which did not occur in

15  this incident. Officer Tonn testified that a carotid hold performed with pressure applied to the carotid arties

16  would cause an individual to lose consciousness within seconds.

17    Plaintiff's retained expert, Roger Clark, appears to agree: he noted that if a carotid hold had been

18  perfected, Plaintiff would have been unconscious within seconds and would not have been able to speak.

19  Defendant's retained expert opined Officer Tonn did not "use" a carotid hold, supported by the undisputed

20  facts that Plaintiff never lost consciousness, and Plaintiff was able to talk and yell clearly during the entire

21  struggle, characterizing the hold as a "control hold."

22    These additional facts establish Plaintiff is not entitled to summary judgment.

23  **1.  OFFICER TONN'S USE OF AN INCOMPLETE CAROTID MANEUVER DOES NOT
    CONSTITUTE SIGNIFICANT OR DEADLY FORCE**

24

25    Plaintiff's motion appears to contend that the use and/or attempted use of a carotid hold is *per se*

26  unconstitutional and constitutes a severe intrusion on the Plaintiff's Fourth Amendment rights (Docket

27  No. 15-1 at pg. 6: 1-11).  This argument must be rejected.

28

{02191692.DOCX}

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff solely relies on *Nava v. City of Dublin*, 121 F.3d 453 (9th Cir. 1997) which actually reversed an injunction issued against the LAPD's use of carotid holds.   Plaintiff's reliance on *Nava* is misplaced, not only for the procedural differences and issues on appeal, but also because the facts in that case reveal that the plaintiff lost consciousness.

The Ninth Circuit has not definitively held that a carotid control hold must be classified as deadly force. Ninth Circuit courts have classified the use of a carotid hold as an appropriate form of less than deadly force. In *Gonzalez v. City of Anaheim*, 747 F.3d 789, 792, fn. 3 (9th Cir. 2014), officers attempted to apply a carotid hold on a resisting suspect. The Court found, "the constitutional standard for using force less than deadly force is lower. [Citation]… Because it is undisputed that Gonzalez did not respond to the officers' directions before any force was applied, appeared to be trying to swallow potential evidence, and began driving away, the defendants were entitled to summary judgment on the uses of force leading up to the gunshot," which included the use of an attempted carotid hold. *Gonzalez v. City of Anaheim, supra*, at 797, fn. 3; *See also Gregory v. County of Maui*, 523 F.3d 1103, 1106-07 (9th Cir. 2008) (holding that use of a carotid-type restraint was objectively reasonable). The appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. *Id. See, e.g., Illinois v. Lafayette,* 462 U.S. 640, 647 (1983); *United States v. Martinez–Fuerte,* 428 U.S. 543, 556–57 n. 12 (1976). Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. *Scott v. Henrich, supra*, at 915.

The Supreme Court defined a carotid hold in *City of Los Angeles v. Lyons,* 461 U.S. 95, 98 (1983):

> "In the carotid hold, an officer positioned behind a subject places one arm around the subject's neck and holds the wrist of that arm with his other hand. The officer, by using his lower forearm and bicep muscle, applies pressure concentrating on the carotid arteries located on the sides of the subject's neck. The "carotid" hold is capable of rendering the subject unconscious by diminishing the flow of oxygenated blood to the brain."

*Id.* In *Ericson v. City of Phoenix,* a wrongful death carotid hold case, Officer's detained a suspect through the use of a carotid hold that lasted over four minutes. *Erickson v. City of Phoenix,* No. CV-1-01942-PHX-JAT, 2016 WL 6522805 at *2-3 (D. Ariz. Nov. 3, 2016). Due to the length of the carotid hold, the suspect suffered an anoxic brain injury ultimately leading to his death. *Id.* at 3. The Court held that a "carotid restraint or hold can result in great bodily injury if the hold is in place long enough… a carotid hold for

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

over four minutes is a sufficiently serious intrusion upon liberty, and must be justified by a commensurately serious government interest." *Id.* at 13; *see Brown v. Grinder*, No. 213CV01007KJMKJN, 2019 WL 280296, at *9 (E.D. Cal. Jan. 22, 2019) *citing Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 783675, at *10 (D. Ariz. Feb. 8, 2018) (use of a carotid hold may constitute significant use of force and threatens serious injury when used multiple times.)

In other words, the determination as to whether a carotid hold constitutes deadly/significant force is highly fact specific, and there is "little case law evaluating—as a matter of law—the nature and quality of the force exerted from a carotid hold." *Ericson v. City of Phoenix, Supra*, at 13.

Here, Plaintiff claims that it is undisputed that Officer Tonn placed Plaintiff in a carotid hold, and, therefore, his actions constituted a "severe intrusion on Plaintiff's Fourth Amendment Rights." (Docket No. 15-1 at p. 6: 6-11). Contrary to Plaintiff's contention, there are numerous material facts to indicate that Officer Tonn could not have completed an actual carotid hold, but rather used an incomplete carotid hold and/or a carotid maneuver. (UMF Nos. 11-12, 15-16).

While it is undisputed that Officer Tonn placed (commenced) Plaintiff in a carotid maneuver to control him, this maneuver only consisted of Officer Tonn placing his arm around Plaintiff's neck to gain control without applying pressure to the carotid arteries. (UMF Nos. 11-12). Defense Expert Don Cameron believed that Officer Tonn did not use a true carotid hold because Plaintiff was conscious and talking during the entire maneuver. (UMF No. 16).  Don Cameron testified that a carotid hold, applied with pressure, would leave someone unconscious within seconds (Id.). Plaintiff's expert Roger Clark also agreed that a true carotid hold would remove an individual's ability to speak and render them unconscious within seconds (Id.). Lastly, video evidence shows that Plaintiff never lost consciousness and Plaintiff was able to talk and yell clearly during the entire hold. (UMF No. 12).

Defendants' additional undisputed facts demonstrate that Plaintiff cannot affirmatively present sufficient facts to show an actual carotid hold was used. Plaintiff has not presented any evidence that can establish the hold applied pressure to the Plaintiff's carotid arteries, or caused him to lose consciousness and/or the ability to speak. (UMF No. 12). The undisputed facts demonstrate that Officer Tonn's maneuver was unlike the types of holds/restraints that the Ninth Circuit has found to constitute deadly or significant force.  Therefore, Plaintiff has not presented undisputed evidence to establish that the carotid maneuver

1   constituted deadly, or even, a significant amount of force.

2   **2.  THE GOVERNMENT INTEREST IN SAFELY DETAINING PLAINTIFF THROUGH**
3   **BRIEF USE OF FORCE WAS OBJECTIVELY REASONABLE UNDER THE**
    **TOTALITY OF THE CIRCUMSTANCES**
4

5   Under *Graham*, the government's interest can be measured by looking at the severity of the crime

6   at issue, whether the suspect poses and immediate threat to safety of the officers or others, and whether

7   the suspect is actively resisting or attempting to evade arrest. *Graham v Connor*, *supra*, at 396 (1989).

8   Applying the Graham factors to the unique facts of this case, it becomes clear that the amount of force

9   used by Officer Tonn during the struggle was objectively reasonable as a matter of law.

10   **a.  Severity of Crime**

11   Plaintiff's Motion alleges that Officer Tonn did not have probable cause to arrest and further

12   alleges that, "the crime of not getting off a cell phone when commanded to do so would not constitute a

13   severe crime." (Docket No. 15-1 at p. 7: 6-12). To supplement Plaintiff's argument, he cites to *Young v.*

14   *County of Los Angeles*, an excessive force case that involved the use of pepper spray and baton blows

15   during a traffic stop for a seat belt violation. *Young v. County of L.A.*, 655 F.3d 1156, 1158 (9th Cir. 2012).

16   In the above cited case, Young exited his truck after the initial traffic stop, refused to follow orders to

17   return to his truck, and insisted on sitting on the curb to finish eating broccoli. *Id.* at 1164. Young was

18   ultimately pepper sprayed and struck with a baton for refusing to follow the officer's commands to return

19   to his truck *Id.* at 1158. The Court held, "when a suspect's disobedience of a police officer takes the form

20   of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or

21   otherwise, to the officer or others, it will not, without more, give rise to a governmental interest in the use

22   of significant force." *Id.* at 1165.

23   The facts of our current matter do not follow the facts of *Young*. Officer Tonn had probable cause

24   to arrest Plaintiff for resisting and driving with a suspended driver's license (UMF Nos. 7-14, 18).

25   "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of

26   facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or

27   was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (alteration

28   in original) (*quoting Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)). The specific

{02191692.DOCX}

8

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1   facts known to Officer Tonn where as follows: Traffic stop conducted for expired registration in a high

2   crime area (UMF No. 2); Officer Tonn perceived Plaintiff as angry and uncooperative (UMF No. 5);

3   Plaintiff refused to follow Officer Tonn's commands to drop the phone (UMF Nos. 6-7); Officer Tonn

4   feared for his safety (UMF No. 8); Plaintiff pulled away from Officer Tonn when he attempted to grab the

5   phone (UMF No. 9-10); and Plaintiff's driver's license was suspended (UMF No. 18). These specific facts

6   gave officer Tonn probable cause to effectuate the arrest. Furthermore, Officer Tonn never used a taser,

7   baton, and/or other strike weapons (UMF No. 20). Officer Tonn used a brief carotid maneuver to gain

8   control of the situation and Plaintiff has not presented undisputed evidence demonstrating that the

9   maneuver that Officer Tonn used constituted significant force, yet alone deadly force.

10      The Ninth Circuit has found that reasonable force may be used even when the crime was not

11   overwhelmingly severe. In *Gregory v. County of Maui*, officers used a neck hold to subdue an

12   uncooperative suspect who was trespassing. *Gregory v. County of Maui*, 523 F.3d 1103, 1105 (9th Cir.

13   2008). The suspect ultimately suffered a heart attack during the struggle and died. *Id.* The Court found

14   no excessive force even though the suspected crime was only trespass. *Id.* at 1107. The Court stated, "the

15   severity of Gregory's trespass and of the threat he posed were not overwhelming, but we are satisfied that

16   the force used by the officers was proportionate to both. The Fourth Amendment does not require more."

17   *Id. See Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir.1994). Where officers are presented

18   with circumstances indicating that no crime was committed, the "severity of the crime at issue" factor is

19   necessarily diminished as a justification for the use of force — although, as our cases have held, the force

20   used may still be reasonable if the other *Graham* factors taken together favor that conclusion. *Velazquez*

21   *v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015).

22      Therefore, although Plaintiff's crimes were not overwhelmingly severe, the amount of force used

23   was a reasonably objective response to the resistance and hostility from Plaintiff and this factor weighs in

24   favor of Officer Tonn.

25   **b. Threat to Safety of Officers or Others**

26      Plaintiff contends that it is undisputed that Plaintiff never posed an immediate danger to Officer

27   Tonn. (Docket No. 15-1 at p. 8: 1-25). However, the undisputed material facts presented by Defendants

28   demonstrate that Plaintiff posed a clear and immediate danger to Officer Tonn. As stated above, the stop

{02191692.DOCX}                                    9

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1   occurred in a high crime area, where Officer Tonn had previously dealt with incidents of stolen guns and

2   cars. (UMF No. 2) Plaintiff had expired registration and a suspended driver's license (UMF Nos. 1, 18).

3   Plaintiff is shown on the video footage acting agitated and angry, refusing to put his phone down, and

4   resisting Officer Tonn by moving towards the center of his car. (UMF Nos. 2-8). Plaintiff continued to

5   disobey orders to put his hands behind his head when Officer Tonn attempted to detain him in handcuffs

6   on the ground (UMF Nos. 13-14) Lastly, Officer Tonn specifically explained to Plaintiff the reason why

7   a cellphone poses a threat to an officer, and explained why suspects are not allowed to use phones during

8   a traffic stop. (UMF No. 21). There was the realistic possibility that Plaintiff could use his phone to call

9   for backup thus posing an immediate threat of danger to Officer Tonn.

10          Plaintiff also contends that Officer Tonn testified that Plaintiff posed no immediate threat,

11   however, this is also in dispute. (Docket No. 15-1 at p. 8: 3-6). Officer Tonn testified and articulated the

12   objective reasons why officers don't allow individuals to use a cellphone during a stop, explaining the

13   danger that it poses to both the individual and the officer. (UMF Nos. 7-8, 21).

14          Lastly, Plaintiff claims that the carotid maneuver prevented him from breathing. (Docket No. 15-

15   1 at p. 8:13-16). This is also disputed by the body warn camera and Plaintiff's cell phone video, depicting

16   Plaintiff yelling at Officer Tonn during the entire struggle that lasted less approximately a minute.  (UMF

17   No. 11-15).

18          There are numerous objective reasons to support Officer Tonn's belief that Plaintiff posed a threat

19   of danger to him, and use of the brief carotid maneuver to safely detain Plaintiff was reasonable under the

20   totality of the circumstances. Thus, this factor weighs in favor of Defendants.

21          **c.  Actively Resisting or Attempting to Evade**

22          Plaintiff's contention that he was taken out of the car without provocation and resistance is also

23   disputed by the video footage and deposition testimony (Docket No. 15-1 at p. 9: 1-4). Plaintiff refuses to

24   drop the phone initially, pulls away from the officer towards the center of the vehicle, holds the cellphone

25   in his hand once brought to the ground, and refuses to put his hands behind his back despite repeated

26   orders by Officer Tonn to do so. (UMF Nos. 5-13). All these facts dispute Plaintiff's claim that he offered

27   no provocation and resistance, and supports weighing of this factor in Officer Tonn's favor.

28   ///

{02191692.DOCX}

10

1      Based on the numerous disputed facts stated above, Plaintiff has not shown that the force used was

2  excessive as a matter of law. Defendants' undisputed facts indicate the contrary, in that the use of force

3  was objectively reasonable under the totality of the circumstances.

4  **B.    PLAINTIFF'S REQUEST FOR PARTIAL SUMMARY JUDGEMENT MUST BE**

5  **DENIED BECAUSE OFFICER TONN IS ENTITLED TO QUALIFIED IMMUNITY**

6      Plaintiff's Motion should be denied on the separate and additional ground that Officer Tonn is

7  entitled to qualified immunity with respect to the use of force. Qualified immunity from suit extends to

8  "government officials performing discretionary functions … insofar as their conduct does not violate

9  clearly established statutory or constitutional rights of which a reasonable person would have known. "

10  *Harlow v. Fitzgerald*, 457 U.S 800, 818-818 (1982). Qualified immunity is a question of law to be decided

11  by the court. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Torres v. City of Los Angeles*, 548 F.3 1197,

12  1210 (9th Cir. 2008).  The plaintiff bears the burden of showing that the rights allegedly violated were

13  clearly established. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).  When the

14  qualified immunity defense is asserted, liability for a constitutional tort depends on two inquiries: (1)

15  whether a right was violated; and (2) whether the right was clearly established such that a reasonable

16  person would have known that his actions violated the right. *Pearson v. Callahan*, 555 U.S. 223, 232

17  (2009); *Saucier v. Katz*, 533 U.S. 194 (2001).

18      Qualified immunity attaches when an official's conduct does not violate clearly established

19  statutory or constitutional rights which a reasonable person would have known. *Kisela v. Hughes*, 138 S.

20  Ct. 1148, 1152 (2018), *citing to White v. Pauly*, 137 S.Ct. 548, 551 (2017).  Because the focus is on

21  whether the officer had fair notice that his/her conduct was unlawful, reasonableness is judged from the

22  backdrop of the law at the time of the conduct. *Kisela*, 138 S.Ct. at 1152.

23      The Court's case law does not require a case directly on point for a right to be clearly established;

24  however, existing precedent must have placed the statutory or constitutional question beyond debate.

25  *Kisela*, 138 S.Ct. at 1152. (*See also S.B. v. County of San Diego*, 864 F.3d 1010, 1015, (9th Cir. 2017),

26  stating that precedent must put the defendant on clear notice that using deadly force in the particular

27  circumstances would be excessive.)  In other words, immunity protects all but the plainly incompetent or

28  those who knowingly violate the law. *Kisela*, 138 S.Ct. at 1152. The Supreme Court has repeatedly told

1    courts, and the Ninth Circuit in particular, not to define "clearly established" at a high level of generality.

2    *Id.*, citing *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-1776 (2015).   Clearly

3    established law must be "particularized" to the facts of the case.   *White v. Pauly*, 137 S. Ct. 548, 552

4    (2017), *citing to Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  *See also City of Escondido v. Emmons*,

5    139 S.Ct. 500, 503 (2019), stating that under Supreme Court precedent, the clearly established right must

6    be defined with specificity.

7           Specificity is especially important in the Fourth Amendment context, where the court has

8    recognized that it is difficult for an officer to determine how the law on excessive force will apply to the

9    factual situation the officer confronts.  *City of Escondido*, 139 S.Ct. at 503, *citing to Kisela v. Hughes*, 138

10   S. Ct. 1148, 1152 (2018); *District of Columbia v. Wasby*, 135 S.Ct. 577, 593 (2018); *White v. Pauly*, 137

11   S.Ct. 548, 551 (2017) and *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).   An officer is entitled to qualified

12   immunity unless existing precedent "squarely governs" the specific facts at issue.  *Kisela*, 138 S.Ct. 1153,

13   *citing to Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015).

14          In *Shafer*, 868 F.3d at 1117, the Ninth Circuit acknowledged that the clearly established law must

15   have been "developed in such a concrete and factually defined context to make it obvious to all reasonable

16   government actors, in the defendants place."  "[T]he clearly established law must be 'particularized' to the

17   facts of the case."  *White*, 137 S. Ct. at 552 (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

18          The Supreme Court, in *District of Columbia v. Wesby*, (2018) 138 S.Ct. 577 recently reemphasized

19   the need for a plaintiff arguing against qualified immunity to identify "a controlling case or robust

20   consensus of cases" finding a Fourth Amendment violation under similar circumstances unless it is a "rare

21   'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear[.]"  *District of*

22   *Columbia v. Wesby*, (2018) 138 S.Ct. 577, 590-91 (*citing Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)

23   (*per curiam*) and *White*, 137 S. Ct. (providing that officers were entitled to qualified immunity).

24   1.  THE RIGHT AT ISSUE WAS NOT CLEARLY ESTABLISHED

25          Plaintiff claims that Officer Tonn's use of the carotid maneuver constituted a Fourth Amendment

26   violation, however, Plaintiff fails to cite to a "robust" consensus of cases precluding the use of a brief hold

27   to detain a resisting suspect. Plaintiff's cited authorities are clearly distinguishable from the facts of the

28

1  current matter, and certainly do not clearly establish that the use of a carotid maneuver, without pressure,

2  under the circumstances of this case was unreasonable under the Fourth Amendment.

3      Plaintiff also relies on, *Bryan v. MacPherson*, which involved the use of a stun gun during a traffic

4  stop for a seatbelt violation. *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010). The Court found that the

5  use of a stun gun was excessive under the circumstances, but did not violate clearly established Fourth

6  Amendment Rights, which appears to contradict Plaintiff's argument. *Id*.

7      Lastly, Plaintiff relies on, *Blankenhorn v. City of Orange*, where the Court found repeated punches

8  to a resisting suspect as unjustifiable under the circumstances. *Blankenhorn v. City of Orange*, 485 F.3d

9  463, 480 (9th Cir. 2007).

10      Unlike Plaintiff's cited authorities, Officer Tonn used a maneuver without pressure, never punched

11  Plaintiff, and never used any strike and/or impact weapons. (UMF No. 20). Plaintiff has failed to meet his

12  burden showing that Plaintiff's right to be free from a brief control hold under the facts of this case was

13  clearly established on the subject date. Case law certainly does not establish that use of this maneuver

14  under the circumstances was *per se* unreasonable under the Fourth Amendment. If the law in existence at

15  the time of the incident did not clearly establish that Officer Tonn's conduct would violate the

16  Constitution, "the officer should not be subject to liability or, indeed, even the burdens of litigation."

17  *Brosseau v. Haugen*, 543 U.S. 194 (2004). The additional cases not cited by Plaintiff establish to the

18  contrary of Plaintiff's position see *Gonzalez v. City of Anaheim*, 747 F.3d 789, 792, fn. 3 (9th Cir. 2014)

19  (Ninth Circuit classified the use of a carotid hold as an appropriate form of less than deadly force); *see*

20  *also Gregory v. County of Maui*, 523 F.3d 1103, 1106-07 (9th Cir. 2008) (holding that use of a carotid-

21  type restraint was objectively reasonable).

22      In sum, Plaintiff has not presented undisputed facts establishing that Officer Tonn was clearly

23  incompetent or knowingly violated the law. Given the disputed facts surrounding the use of the carotid

24  maneuver, and the failure of Plaintiff to provide undisputed facts demonstrating constitutional violations,

25  Plaintiff's motion should be denied.

26                          **V. CONCLUSION**

27      For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion for Partial

28  Summary Judgement be denied.

{02191692.DOCX}

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated:  May 18, 2020

Respectfully submitted,

PORTER SCOTT
A PROFESSIONAL CORPORATION

By */s/ John R. Whitefleet*
  John R. Whitefleet
  Attorney for Defendants CITY OF VALLEJO,
  ANDREW BIDOU, JARRETT TONN

{02191692.DOCX}

14

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**