1  STANLEY GOFF (Bar No. 289564)
   LAW OFFICE OF STANLEY GOFF
2  15 Boardman Place Suite 2
   San Francisco, CA 94103
3  Telephone: (415) 571-9570
   Email: scraiggoff@aol.com
4

5  Attorneys for Plaintiff Robert Strong

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8  ROBERT STRONG; | CASE NO.:  2:18-cv-01246-WBS-AC |
| 9       Plaintiffs, | |
| 10 | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 11 v. | |
| 12 | |
| 13 CITY OF VALLEJO, JARRETT TONN, ANDREW BIDOU and DOE VALLEJO | **DATE: June 1, 2020** **TIME: 1:30 p.m.** **CTRM: 5** |
| 14 POLICE OFFICERS 1-25; | |
| 15       Defendants | |
| 16 | |

17

18

19

20

21

22

23

24

**STATEMENT OF FACTS**

At approximately 2:15 pm on April 19th, 2017 at the location of Springs Road/Lassen St. in the city of Vallejo, the Plaintiff (who is African American) was riding on the bus with his special needs client to the client's house to drop the client off.

The Plaintiff then made a phone call as he walked to his parked car near the client' home. Vallejo Police officer Tonn drove past on the opposite side of the street.  The Plaintiff and Officer Tonn made eye contact as Tonn passed by, and as soon as the Plaintiff opened the door to his parked car while on the phone, Tonn had already made a U-Turn and pulled up in front of the Plaintiff's car.

Officer Tonn got out of his car, and approached Plaintiff and asked what was he doing in the neighborhood. The Plaintiff responded that he had dropped off his client at his client's house. Officer Tonn then told the Plaintiff that he ran the plates of his car and that they came up expired on April 2, 2017. (Defendants Depo Transcripts pg. 14 lines 17-20, Plaintiff's exh "1" Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to Stanley Goff Decl.)

The Plaintiff politely corrected Officer Tonn and informed him that his registration did not expire until the end of April 2017. Officer Tonn informed the Plaintiff that he was recording on his body camera and the Plaintiff informed Tonn that he was recording the interaction on his cell phone. (Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's  exh "3" to Stanley Goff Decl.)

At that moment, Officer Tonn reached for the claimant's phone and the claimant pulled away so that he couldn't grab his phone. Officer Tonn then threw the Plaintiff onto the ground and placed him into a carotid hold, and told the Plaintiff to stop resisting while he was trying to

1    breathe. (Defendant's Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, Plaintiff's

2    exh "4" Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell Phone Cam

3    Video Footage. 00:00-01:24, Plaintiff's exh "3" to Stanley Goff Decl.)

4       The officer put his knee onto the Plaintiff's head and forced it into the concrete.  The

5    Plaintiff's lip scraped the concrete and started bleeding.  The Plaintiff was subsequently arrested

6    and detained for two hours and then released with Officer Tonn saying, "You seem like a nice

7    guy and you're working so I'll let you go".  He walked the Plaintiff outside.

8    *Opinions By Roger Clark*

9       Plaintiffs' Police Practices Expert, Mr. Roger Clark, opined that Defendant Tonn used

10   excessive force since Mr. Strong was non-combative, there was no justification for any further

11   use of any physical force that Officer Tonn placed his knee on the back of Mr. Strong's head and

12   forced Mr. Strong's face into the rough asphalt, while Mr. Strong was piled upon by Officer

13   Tonn (Roger Clark Rule 26 Report opinion #1 pg. 13)

14       Mr. Clark further opined that given the quality/completeness of the Vallejo Police

15   department's use of force investigation conducted in this incident (that it was justified) vis-avis the

16   apparent excessive use of force as indicated by Mr. Strong's (Plaintiff's) numerous and obvious injuries,

17   that the customs and practices of the Vallejo Police Department encourage their Officers to ignore POST

18   standards and use excessive force.  As such, their collective approval of these tactics puts the general

19   public at unnecessary future risk of death. (Roger Clark Rule 26 Report opinion #3 pg. 15)

20       Mr. Clark also opined that after the Plaintiff was pulled from his car by his hair, choked,

21   and pinned to the ground, it should have been clear to Officer Tonn that Mr. Strong was not a

22   threat to him, which should have prompted a different approach then the force that was

23   used.(Roger Clark Rule 26 Report opinions #4 pg. 15) and that Officer Tonn violated POST Basic

24   training and Vallejo Police Department policy when applied a choke hold to Mr. Strong, when no threat-

1    of-life condition existed.  Officer Tonn also failed to notify medical, after he applied a choke hold–

2    despite his assertion that he did not apply a complete carotid restraint.  The fact that Mr. Strong

3    struggled to breath, while Officer Tonn had his arm around Mr. Strong's neck required Officer Tonn to

4    notify medical, and his failure to abide by written policy placed the Plaintiff at risk of serious injury

5    and/or death. (Roger Clark Rule 26 Report opinion #6 pg. 17)

6    **LAW AND ARGUMENT**

7    **PLAINTIFF'S RIGHTS UNDER THE FOURTH AMENDMENT WERE VIOLATED**

8         Excessive force claims are to be analyzed under the Fourth Amendment and its standard

9    of objective reasonableness. (*Scott v. Harris*, 550 U.S. 372, 381-83, (2007); (*Graham v. Connor*,

10   490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).) "We first assess the quantum of

11   force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by

12   evaluating a range of factors." (*Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).)

13        Factors that are considered are the severity of the crime at issue, whether the suspect

14   poses an immediate threat to the safety of the officers or others, and whether he is actively

15   resisting arrest or attempting to evade arrest by flight. (*Graham*, 490 U.S. at 396); (*Luchtel v.*

16   *Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).)

17        The courts in the Ninth Circuit have long considered tasers an "intermediate, significant

18   level of force that must be justified by the governmental interest involved." (*Bryan v.*

19   *MacPherson*, 630 F.3d 805, 810, 826 (9th Cir. 2010)); *(Oliver v. Fiorino*, 586 F.3d 898, 903

20   (11th Cir. 2009)) (recognizing that the Taser is "designed to cause significant, uncontrollable

21   muscle contractions"); *(Bryan*, 630 F.3d at 810 (finding that Taser use "unquestionably seizes the

22   victim in an abrupt and violent manner," and, "[a]ccordingly, the "nature and quality" of the

23   intrusion into the interests of [the suspect] protected by the Fourth Amendment was quite

24   severe.")

1 **The Nature and Quality of the Intrusion**

2        In evaluating the severity of the intrusion on the Plaintiff's Fourth Amendment rights,

3 both "the type and amount of force inflicted." must be evaluated. (*Miller v. Clark Cty.*, 340 F.3d

4 959, 964 (9th Cir. 2003).); ("[T]he fact finder [must] evaluate 'the type and amount of force

5 inflicted.'" (*Chew v. Gates,* 27 F.3d 1432, 1440 (9th Cir. 1994).)

6        The Ninth Circuit has made it clear that in evaluating the severity of the intrusion on a

7 plaintiff's Fourth Amendment rights, a court must assess not only the *amount* of force used (and

8 the severity of the resulting injury), but also the *type* of force used and the *potential* harm it may

9 cause. *See Miller v. Clark Cty.*, 340 F.3d 964 (9th Cir. 2003). ("[W]e assess the gravity of the

10 particular intrusion on Fourth Amendment interests by evaluating *the type and the amount of*

11 *force inflicted."*; (*Scott v. Harris*, 550 US 372, 383 (2007).)

12        The Ninth Circuit has found that the carotid hold constitutes deadly force. <u>*Nava v. City of*</u>

13 <u>*Dublin,* 121 F.3d 453 (9th Cir. 1997)</u>, In <u>*Nava v. City of Dublin,*</u> the district court held that use of

14 a carotid hold constitutes deadly force. In its review of this case on appeal, the Ninth Circuit did

15 not disturb the trial court's finding that the carotid hold constituted deadly force.

16        Here, Defendant Tonn has admitted in his response to the Plaintiff's request for

17 admissions that a carotid restraint was applied to the Plaintiff and this fact is evident based on the

18 body camera footage. (Defendant Response to Plaintiff's request for Admissions. Pg.4 lines 5-

19 12, Plaintiff's  exh "4" Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell

20 Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to Stanley Goff Decl.) Thus, the use

21 of force by Defendant Tonn was a severe intrusion on the Plaintiff's Fourth Amendment rights.

22 "Determining whether the force used to effect a particular seizure is reasonable under the <u>Fourth</u>

23 <u>Amendment</u> requires a careful balancing of the nature and quality of the intrusion on the

1    individual's Fourth Amendment interests against the countervailing governmental interests at

2    stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443

3    (1989) (internal citations and quotations omitted). Determining whether the force used was

4    reasonable "requires careful attention to the facts and circumstances of each particular case,

5    including the severity of the crime at issue, whether the suspect poses an immediate threat to the

6    safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

7    arrest by flight." *Ibid.* "The reasonableness of a particular use of force must be judged from the

8    perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . .

9    . ." *Id.* at 396-97. "In some cases . . . the availability of alternative methods of capturing or

10   subduing a suspect may be a factor to consider." *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th

11   Cir. 2005).

12        Turning to the first factor, Defendant Tonn initially stopped the Plaintiff for having an

13   expired registration tag(s) on his car (a citable offense) (Defendants Depo Transcripts pg. 14

14   lines 17-20, Plaintiff's exh "1" Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2",

15   Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to Stanley Goff

16   Decl.) and he did not have probable cause to arrest the Plaintiff for not getting off of his cell

17   phone when he was commanded to do so, because the Plaintiff was not on his cell phone

18   speaking to anyone, but was simply recording the interaction between him and Defendant Tonn

19   on his phone, which he had a constitutional right to do.  Nevertheless, even if it could be argued

20   that the Defendant had a governmental interest in arresting the Plaintiff for not following his

21   commands, the crime of not getting off of a cell phone when commanded to do so would not

22   constitute a severe crime. (*Young v. County of L.A.*, 655 F.3d 1156, 1164 (9th Cir. 2012) Thus,

23   this factor cuts against the Defendants' justification for the use of significant force. Defendants

1  Depo Transcripts pg. 14 lines 17-20, Plaintiff's exh "1" Body CamVideo Footage. 00:00-01:11,

2  Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to

3  Stanley Goff Decl.

4       The most important of the three factors set out in *Graham* is "whether the suspect poses

5  an immediate threat to the safety of the officer[s]or others." 490 U.S. at 396. Further, Courts in

6  the Ninth Circuit have held that a the use of a carotid hold constitutes deadly force and that such

7  a use of force is not warranted, absent a party posing a threat of immediate danger or great bodily

8  harm to an officer. (*Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997).)

9       It is undisputed that Defendant Tonn placed the Plaintiff in a carotid hold, (Defendant

10  Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, Plaintiff's exh "4" Body

11  CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video Footage.

12  00:00-01:24, Plaintiff's exh "3" to Stanley Goff Decl.) thus, the Plaintiff would have had to pose

13  a threat of immediate danger or great bodily harm to Defendant Tonn to warrant Tonn's use of a

14  carotid hold, however, it is undisputed that Plaintiff never posed a threat of immediate danger or

15  great bodily harm to Tonn, as shown by the video footage and as admitted by Defendant Tonn in

16  his deposition. Defendants Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29

17  lines 2-7, Plaintiff's exh "1" to Stanley Goff Decl ) Also, the video footage shows that the

18  Plaintiff did not pose ***any*** imminent threat to Tonn to warrant the use of such force. Body

19  CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video Footage.

20  00:00-01:24, Plaintiff's exh "3" to Stanley Goff Decl.)

21       Further, the video footage clearly shows that the Plaintiff was not talking to anyone on

22  the telephone and that he was simply recording the interaction between him and Defendant Tonn.

23  (Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video

1  Footage. 00:00-01:24, Plaintiff's  exh "3" to Stanley Goff Decl.) The Plaintiff was taken to the

2  ground without provocation, did not offer any resistance while being taken to the ground and was

3  then placed in a carotid hold (choke hold) causing the Plaintiff extreme pain and distress and

4  preventing him from being able to breathe. (Body CamVideo Footage. 00:00-01:11, Plaintiff's

5  exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to Stanley

6  Goff Decl.) There are no facts pointed out in the incident report, on the video footage or in

7  Defendant Tonn's deposition that indicate that Plaintiff posed a threat of death or great bodily

8  injury or any other imminent threat to Defendant Tonn. (Body CamVideo Footage. 00:00-01:11,

9  Plaintiff's exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to

10  Stanley Goff Decl.)Thus, this factor weighs in the Plaintiff's favor.

11  Turning to the third factor in *Graham,* it is undisputed that based on Defendant Tonn's

12  deposition testimony and the video footage, that Plaintiff was taken out of his car and to the

13  ground without provocation and placed in a carotid restraint, and that he did not offer any

14  resistance while being taken out of his car, to the ground and placed in a carotid hold.

15  (Defendants Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29 lines 2-7; 20

16  lines 8-14, Plaintiff's exh "1" Body CamVideo Footage. 00:00-01:11, Plaintiff's exh"2",

17  Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, Plaintiff's exh "3" to Stanley Goff

18  Decl.) Thus, this factor weighs in the Plaintiff's favor.

19  **THE DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY**

20  "Qualified immunity protects government officers 'from liability for civil damages

21  insofar as their conduct does not violate clearly established statutory or constitutional rights of

22  which a reasonable person would have known." (*Maxwell v. Cty. of San Diego*, 708 F.3d 1075,

23  1082 (9th Cir. 2013); (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) To determine whether an

1 | officer is entitled to qualified immunity, a court must conclude (1) whether the alleged

2 | misconduct violated a constitutional right and (2) whether the right was clearly established at the

3 | time of the alleged misconduct. (*Maxwell*, 708 F.3d at 1082).)

4 | **A.  Violation of a Constitutional Right**

5 | Excessive force claims are to be analyzed under the Fourth Amendment and its standard

6 | of objective reasonableness. (*Scott v. Harris*, 550 U.S. 372, 381-83, (2007); (*Graham v. Connor*,

7 | 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).) "We first assess the quantum of

8 | force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by

9 | evaluating a range of factors." (*Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).)

10 | Factors that are considered are the severity of the crime at issue, whether the suspect

11 | poses an immediate threat to the safety of the officers or others, and whether he is actively

12 | resisting arrest or attempting to evade arrest by flight. (*Graham*, 490 U.S. at 396); (*Luchtel v.*

13 | *Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).)

14 | The Ninth Circuit has found that the carotid hold constitutes deadly force. <u>*Nava v. City of*</u>

15 | <u>*Dublin,*</u> 121 F.3d 453 (9th Cir. 1997), In <u>*Nava v. City of Dublin,*</u> the district court held that use of

16 | a carotid hold constitutes deadly force. In its review of this case on appeal, the Ninth Circuit did

17 | not disturb the trial court's finding that the carotid hold constituted deadly force.

18 | Here, the Defendant violated the Plaintiff's rights under the Fourth Amendment when he

19 | placed the Plaintiff in a carotid hold, which constituted deadly force, because at the time that the

20 | above-mentioned force was used, the Plaintiff was unarmed, did not pose any threat to

21 | Defendant, any other officers or bystanders.

22 | Thus, based on the *Grahm* factors that are to be considered when analyzing a Fourth

23 | Amendment excessive force claim, the Plaintiff's Fourth Amendment rights were violated.

**B. Clearly Established Law**

Further, it has been clearly established by 2017 when the events occurred in this case, that the level of force employed by Defendant Tonn (placing someone in a carotid hold) was significant. *Bryan*, 630 F.3d at 825; *Blankenhorn*, 485 F.3d at 480 (impact blows by punching or kicking are considered significant or intermediate force capable of inflicting significant pain and causing serious injury) and constituted deadly force, only to be used if faced with an immediate threat of danger or great bodily harm. (*Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997),)

Therefore, the Defendant is not entitled to qualified immunity.

***At this Time Plaintiff Dismisses His Claim for False Arrest.***

**CONCLUSION**

The Court should deny the Defendants' Motion for Summary Judgment in it entirety.

Dated: May 18, 2020

   /S/ STANLEY GOFF

Attorney for Plaintiff Robert Strong

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24