STANLEY GOFF (Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

Attorneys for Plaintiff Robert Strong

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STRONG;<br><br>　　Plaintiffs,<br><br>v.<br><br><br>CITY OF VALLEJO, JARRETT TONN, ANDREW BIDOU and DOE VALLEJO POLICE OFFICERS 1-25;<br><br>　　Defendants | CASE NO.: 2:18-cv-01246-WBS-AC<br><br><br>**PLAINTIFF'S REPLY TO DEFNDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><br>**DATE: June 1, 2020**<br>**TIME: 1:30 p.m.**<br>**CTRM: 5** |

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT**

Plaintiff has clearly met his burden of proof at trial on his claim in order to prevail on summary judgment because he has affirmatively demonstrated that based on the undisputed facts presented, that no reasonable jury could find other than for him. (*Soremekun v. Thrifty Payless, Inc*. 509 F.3f 978, 984 (9th Cir. 2007).)

**PLAINTIFF'S RIGHTS UNDER THE FOURTH AMENDMENT WERE VIOLATED**

Excessive force claims are to be analyzed under the Fourth Amendment and its standard of objective reasonableness. (*Scott v. Harris*, 550 U.S. 372, 381-83, (2007); (*Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).) "We first assess the quantum of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." (*Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).)

Factors that are considered are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. (*Graham*, 490 U.S. at 396); (*Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).)

**The Nature and Quality of the Intrusion**

In evaluating the severity of the intrusion on the Plaintiff's Fourth Amendment rights, both "the type and amount of force inflicted." must be evaluated. (*Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003).); ("[T]he fact finder [must] evaluate 'the type and amount of force inflicted.'" (*Chew v. Gates,* 27 F.3d 1432, 1440 (9th Cir. 1994).)  The Ninth Circuit has made it clear that in evaluating the severity of the intrusion on a plaintiff's Fourth Amendment rights, a court must assess not only the *amount* of force used (and the severity of the resulting injury), but also the *type* of force used and the *potential* harm it may cause. *See Miller v. Clark Cty.*, 340 F.3d 964 (9th Cir. 2003). The Ninth Circuit has found that the carotid hold constitutes deadly force. *Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997), In *Nava v. City of Dublin,* the district court held that use of a carotid hold constitutes deadly force. In its review of this case on appeal, the Ninth Circuit did not disturb the trial court's finding that the carotid hold constituted deadly force.

Defendant Tonn has admitted in his response to the Plaintiff's request for admissions that a carotid restraint was applied to the Plaintiff and this fact is evident based on the body camera footage. (Defendant Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4"

Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) The Defendants attempt to present disputed evidence by producing testimony by Tonn that he did not apply pressure to Plaintiffs neck, and thus his hold was an incomplete or imperfect carotid hold and according their expert Don Cameron, that a carotid hold applied with pressure would leave someone unconscious within 3-8 seconds. However, Defendants fail to place this item in dispute. Officer Tonn's self-serving testimony that he did not place pressure to the Plaintiff's neck or the inference that he did not place the Plaintiff in a properly applied carotid hold does not invalidate his admission that he placed the Plaintiff in a carotid hold, which constitutes lethal force or deadly force. *Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997). (Defendant Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl). Thus, the use of force by Defendant Tonn was a severe intrusion on the Plaintiff's Fourth Amendment rights.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)

Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ibid.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . ." *Id.* at 396-97. "In some cases . . . the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005). Turning to the first factor, Defendant Tonn initially stopped the Plaintiff for having an expired registration tag(s) on his car (a citable offense) (Defendants Depo Transcripts pg. 14 lines 17-20, exh "1" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) The Plaintiff was subsequently arrested for not getting off of his cell phone when he was commanded to do so. Nevertheless, even if it could be argued that the Defendant had a governmental interest in arresting the Plaintiff for not following his commands,

the crime of not getting off of a cell phone when commanded to do so would not constitute a severe crime. (*Young v. County of L.A.*, 655 F.3d 1156, 1164 (9th Cir. 2012). The Defendants attempt to present disputed evidence by pointing to the Court that even though the expired registration was the basis for the stop, Plaintiff's conduct after the stop was what led to the misdemeanor resisting, and that Plaintiff was ultimately arrested for interfering and obstructing with Officer Tonn's traffic stop investigation and driving on a suspended license.

However, Defendants fail to place this item in dispute. Even if this analysis was to begin after the stop as Defendants suggest, the fact that Plaintiff was ultimately cited for violating Penal Code Section 148, such a misdemeanor charge in the 9th Circuit is not considered a severe crime for purposes of conducting an excessive force analysis. (*Young v. County of L.A.*, 655 F.3d 1156, 1164 (9th Cir. 2012) (Defendants Depo Transcripts pg. 14 lines 17-20, exh "1" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl. Thus, this factor cuts against the Defendants' justification for the use of significant or lethal force.

The most important of the three factors set out in *Graham* is "whether the suspect poses an immediate threat to the safety of the officer[s]or others." 490 U.S. at 396. Further, Courts in the Ninth Circuit have held that a the use of a carotid hold constitutes deadly force and that such a use of force is not warranted, absent a party posing a threat of immediate danger or great bodily harm to an officer. (*Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997).)

It is undisputed that Defendant Tonn placed the Plaintiff in a carotid hold, (Defendant Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) Thus, the Plaintiff would have had to pose a threat of immediate danger or great bodily harm to Defendant Tonn to warrant Tonn's use of a carotid hold, however, Plaintiff never posed a threat of immediate danger or great bodily harm to Tonn, as shown by the video footage and as admitted by Defendant Tonn in his deposition. Defendants Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29 lines 2-7, exh "1" to Stanley Goff Decl ) Also, the video footage shows that the Plaintiff did not pose *__any__* imminent threat to Tonn to warrant the use of such force. Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.)

Further, the video footage clearly shows that the Plaintiff was not talking to anyone on the telephone and that he was simply recording the interaction between him and Defendant Tonn. (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) The Plaintiff was taken to the ground without provocation, did not offer any resistance while being taken to the ground and was then placed in a carotid hold (choke hold) causing the Plaintiff extreme pain and distress and preventing him from being able to breathe. (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) There are no facts pointed out in the incident report, on the video footage or in Defendant Tonn's deposition that indicate that Plaintiff posed a threat of death or great bodily injury or any other imminent threat to Defendant Tonn. (Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.)

Here, the Defendants attempt to present disputed evidence insofar as Plaintiff is using a "deadly force" assumptive standard, because the fact presented by Plaintiff that Tonn placed him in carotid hold as presented, is immaterial without a determination that the force used should be considered 'deadly', which depends on the facts and circumstances, not as a per se principle.

Further, Defendants attempt to present disputed evidence by pointing out that the traffic stop occurred in a high crime area, and Plaintiff is shown on the video footage refusing to listen, was agitated, and uncooperative. However, Defendants fail to place this item of material evidence in dispute and further fail to even address this item. Tonn admits that he placed the Plaintiff in a carotid hold. Thus, the "deadly force" assumptive standard must be applied.

Further, the evidence (video footage and testimony of Tonn) shows that Plaintiff did not pose a threat of immediate danger or great bodily harm to Jarrett Tonn at the time that he was placed in a carotid hold, which is what would have been required for Tonn to use lethal force, which he did. Tonn's Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29 lines 2-7, exh "1" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl. Thus, this factor weighs in the Plaintiff's favor.

Turning to the third factor in *Graham,* it is undisputed that based on Defendant Tonn's deposition testimony and the video footage that Plaintiff was taken out of his car and to the ground without provocation and placed in a carotid restraint, and that he did not offer any resistance while being taken out of his car, to the ground and placed in a carotid hold.

Defendants attempt to present disputed evidence by pointing out that Officer Tonn attempted to take the phone, Plaintiff pulled away and leaned into the center of his vehicle, and that after Plaintiff was extracted from the vehicle he continued to hold the phone in his hand despite repeated attempts to drop the phone, and once on the ground, Officer Tonn had to repeatedly tell Plaintiff to put his hands behind his back so that he could be detained in handcuffs. However, Defendants fail to place this item in dispute. Defendant Tonn specifically testified under oath at numerous times during his deposition that the Plaintiff did not engage in any resistance as he was being pulled out of his car and the video evidence support this testimony. Defendants Depo Transcripts pg. 13 lines 18-23; 26, lines 19-25; 27 lines 1; 29 lines 2-7; 20 lines 8-14, exh "1'Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl. Thus, this factor weighs in the Plaintiff's favor.

**THE DEFENDANT NEVER ISSUED A WARNING BEFORE USING LETHAL FORCE**

The Ninth Circuit has defined the warning required before using force—even force that does not qualify as deadly force as a "warning of the imminent use of such a significant degree of force." *Deorle*, 272 F.3d at 1285 and that officers should provide warnings, where feasible, even when the force used is less than deadly if the use of force may result in serious injury. *See Brewer v. City of Napa*, 210 F.3d 1093, 1094-1095 (9th Cir. 2000) (police officer gave warning before setting dog on suspect); *Vera Cruz*, 139 F.3d at 660 (same); *Headwaters Forest*, 240 F.3d at 1193-94 (police warned protesters before use of pepper spray) and that the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test.

In the present case, the desirability and feasibility of a warning are obvious. Plaintiff might have simply handed over his telephone, if Tonn had warned him that he would use force to place him under arrest if he did not head his commands. There was ample time to give such a warning and no reason whatsoever not to do so. Defendants dispute this item of evidence as immaterial because whether Plaintiff was actually placed in a carotid hold is disputed.

Furthermore, Defendants dispute this item by pointing out that some type of warning was issued by Tonn to the Plaintiff "I'm going to take this phone. Put your hands behind your back" before he places Plaintiff in the hold. However, Defendants fail to place this item of evidence in dispute. This item of evidence is definitely material. Plaintiff was in fact placed in a carotid hold and no warning was issued by Tonn before this method of lethal force was used. Defendant Response to Plaintiff's request for Admissions. Pg.4 lines 5-12, exh "4" Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl. Further, it is undisputed that there was no warning provided by Tonn prior to him taking the Plaintiff out of the car, onto the ground and placing him in a carotid hold and at the time that the Tonn told the Plaintiff to place his hands behind his back, he was already applying the carotid hold on Plaintiff.  Body CamVideo Footage. 00:00-01:11, exh"2", Plaintiff's Cell Phone Cam Video Footage. 00:00-01:24, exh "3" to Stanley Goff Decl.) Thus, this factor weighs in favor of the Plaintiff.

**THE DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY**

"Qualified immunity protects government officers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013); (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) To determine whether an officer is entitled to qualified immunity, a court must conclude (1) whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct. (*Maxwell*, 708 F.3d at 1082).)

### A. Violation of a Constitutional Right

Excessive force claims are to be analyzed under the Fourth Amendment and its standard of objective reasonableness. (*Scott v. Harris*, 550 U.S. 372, 381-83, (2007); (*Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).) The Ninth Circuit has found that the carotid hold constitutes deadly force. *Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997), Here, the Defendant violated the Plaintiff's rights under the Fourth Amendment when he placed the Plaintiff in a carotid hold, which constituted deadly force, because at the time that the above-mentioned force was used, the Plaintiff was unarmed, did not pose any threat to Defendant, any other officers or bystanders. Thus, the Plaintiff's Fourth Amendment rights were violated.

### B. Clearly Established Law

It has been clearly established by 2017, that the level of force employed by Defendant Tonn was significant. *Bryan*, 630 F.3d at 825; *Blankenhorn*, 485 F.3d at 480 (impact blows by punching or kicking are considered significant or intermediate force capable of inflicting significant pain and causing serious injury) and constituted deadly force, only to be used if faced with an immediate threat of danger or great bodily harm. (*Nava v. City of Dublin,* 121 F.3d 453 (9th Cir. 1997)). The Defendants in their opposition implore this Court to view the cases of *Bryan, Blankenhorn* and *Nava* with a "high degree of specificity," and to hold that these cases are markedly distinguishable and inapplicable to the facts of Plaintiff's case; that Officer Tonn used a maneuver without pressure, never punched Plaintiff, and never used any strike and/or impact weapons and that case law certainly does not establish that use of this maneuver under the circumstances was per se unreasonable under the Fourth Amendment.

Plaintiff concedes that the United States Supreme Court has advised lower courts construing claims of qualified immunity in excessive force cases "not to define clearly established law at a high level of generality." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)).

However, the inverse of a "high level of generality" is not, as the Defendants erroneously reasons or suggests, a previous case with facts identical to those in the instant case, because no two cases will ever be exactly alike. "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 741); *see also White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). Were the rule otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct. *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001). "If **qualified immunity** provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc).

It is thus "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

Although, there is no precedential case with the precise facts of Plaintiff's case as the Defendants point out, Court precedents in the 9th Circuit as well as common sense place beyond debate the question of whether Defendant Tonn acted lawfully when he placed the Plaintiff in a carotid hold, which constituted deadly force, the Plaintiff was unarmed, did not pose any threat to Defendant, any other officers or bystanders, his crime was not severe, he was not resisting or fleeing and no warning was given.

Therefore, the Defendant is not entitled to qualified immunity.

## CONCLUSION

The Court should grant the Plaintiff's Motion for Summary Adjudication.

Dated: May 24, 2020

   /S/ STANLEY GOFF

Attorney for Plaintiff Robert Strong

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24